*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON, and FLINTOFT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Antonio L. JONES**
Seaman Apprentice (E-3), U.S. Navy
*Appellant*

**No. 202500018**

_____

Decided: 13 July 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Philip J. Hamon

Sentence adjudged 17 September 2024 by a special court-martial tried at Naval Base San Diego, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 48 days, and a bad-conduct discharge (BCD).[1]

---

[1] Appellant was credited with 48 days of pretrial confinement credit.

For Appellant:
*Lieutenant Colonel Maryann N. McGuire, USMCR*

For Appellee:
*Lieutenant Colonel Allison Acosta, USMCR*
*Captain Jacob R. Carmin, USMC*

Judge GANNON delivered the opinion of the Court, in which Senior Judge KISOR and Judge FLINTOFT joined.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

GANNON, Judge:

Appellant was convicted, consistent with his pleas, of two specifications of willfully disobeying a superior commissioned officer in violation of Article 90, Uniform Code of Military Justice (UCMJ), and one specification of communicating a threat in violation of Article 115, UCMJ.[2] Appellant asserts a single assignment of error (AOE): whether the adjudged sentence of a BCD is inappropriately severe and plainly unreasonable.[3]

## I. BACKGROUND

Appellant and Seaman (SN) S.T. were in a romantic relationship during the period 2023-2024. However, the romance ended, and the two became estranged. On 6 July 2024, Appellant's commanding officer issued a no-contact order prohibiting Appellant from "personal contact" with SN S.T., expiring 6 August 2024. On 26 July 2024, Appellant willfully disobeyed the no-contact order and began communicating with SN S.T. He sent her threatening messages such as: "when I see u I'm killing you," "I'll even come to you f**king berthing if I got to just watch on my life," "U gone die on everybody I love. . ."

---

[2] 10 U.S.C. §§ 890, 915.

[3] Appellant raised the issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

"I finna kill u," "U dead on you momma and daddy b***h."[4] Later the same day, Appellant went to SN S.T.'s berthing and proceeded to push SN S.T. with his hands. He refused to leave until another Sailor called security. Appellant was subsequently placed in pretrial confinement on board Marine Corps Air Station Miramar on that same day.

On 7 August, Appellant was issued another no-contact order, again prohibiting Appellant from contacting SN S.T. This no-contact order expired on 5 September. On 21 August, Appellant was released from the Miramar brig as part of a Separation in Lieu of Trial Agreement. Upon his release, Appellant attempted to contact SN S.T. via Instagram. The following day, Appellant again attempted to contact SN S.T. several times (either via text message and Instagram, or by calling her). On 27 August, Appellant, once again, texted SN S.T. a threatening message, including, "Oh you boutta cry so hard for what's finna happen."[5] He also proceeded to send messages to SN S.T.'s friends and family indicating "something bad was going to happen to [SN S.T.'s] family and that there would be a lot of funerals in [SN S.T.'s] family."[6]

Appellant was subsequently charged with two specifications of violating Article 90, UCMJ, willfully disobeying a superior commissioned officer; one specification of violating Article 115, UCMJ, communicating a threat; and one specification of violating Article 128b, UCMJ, domestic violence. Appellant entered into a plea agreement with the Office of Special Trial Counsel (OSTC) to plead guilty to the violations of Articles 90 and 115, and in exchange, the special trial counsel agreed to withdraw and dismiss the specification alleging a violation of Article 128b.

In the plea agreement, the parties agreed that in exchange for Appellant's pleas of guilty, the military judge would adjudge 48 days of time-served confinement. The plea agreement vested the military judge with the discretion to adjudge a BCD, forfeiture of pay, a reduction to E-1, and all other lawful punishments.[7] At trial, the military judge sentenced Appellant to a BCD, reduction to E-1, and confinement for 48 days.

---

[4] Pros. Ex. 1 at 3.

[5] Pros. Ex. 1 at 3.

[6] Pros. Ex. 1 at 3.

[7] App. Ex. IV at 6.

## II. Discussion

**The BCD Was Not Plainly Unreasonable.**[8]

*1. Standard of Review*

Previously, Article 66, UCMJ, directed that the Court of Criminal Appeals (CCA) may only affirm the sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved. Under the "should be approved" construct, sentence appropriateness was reviewed de novo.[9] However, Congress amended Article 66, UCMJ, in the National Defense Authorization Act for Fiscal Year 2022 and replaced the "should be approved" construct with a new lens through which the CCAs conduct sentence review. As amended, Article 66(e) now authorizes the CCAs to review sentences to determine:

(A) whether the sentence violates the law;

(B) whether the sentence is inappropriately severe–

(i) if the sentence is for an offense for which the President has not established a sentencing parameter pursuant to section 539E(e) of the National Defense Authorization Act for Fiscal Year 2022; or

(ii) in the case of an offense for which the President has established a sentencing parameter pursuant to section 539E(e) of the National Defense Authorization Act for Fiscal Year 2022, if the sentence is above the upper range of such sentencing parameter;

(C) in the case of a sentence for an offense for which the President has established a sentencing parameter pursuant to section 539E(e) of the

---

[8] Appellant's AOE alleges that the BCD component of the adjudged sentence was plainly unreasonable *and* inappropriately severe. Here, Appellant pleaded guilty to violating UCMJ Articles 90 and 115. The President has established sentencing parameters for both. As amended, Article 66(e)(1)(B)(ii), UCMJ, limits the inappropriately severe analysis where the President has established sentencing parameters to sentences that are above the upper range of such sentencing parameters. The President's sentencing parameters for Articles 90 and 115 deal only with periods of confinement and are silent as to discharge. As such, in this case, the inappropriately severe analysis is limited to sentences of confinement and is inapplicable to the BCD component of Appellant's sentence. Having carefully considered the inappropriately severe component of the AOE, we find that it does not warrant discussion or relief. *See United States v. Matias*, 25 M.J. 356 (C.M.A. 1987).

[9] *United States v. Lane,* 54 M.J. 1, 2 (C.A.A.F. 2006).

National Defense Authorization Act for Fiscal Year 2022, whether the sentence is a result of an incorrect application of the parameter;

(D) whether the sentence is plainly unreasonable; and

(E) in review of a sentence to death or to life in prison without eligibility for parole determined by the members in a capital case under section 853(c) of this title (article 53(c)), whether the sentence is otherwise appropriate, under rules prescribed by the President.[10]

The standard of review for whether a sentence is plainly unreasonable under the amended Article 66, UCMJ, to date, has yet to be defined. In determining whether Appellant's sentence is "plainly unreasonable," Appellant urges us to review his sentence de novo, while the Government argues we should adopt a more deferential standard. Several federal civilian courts have applied a highly deferential standard of review in determining whether a sentence is "plainly unreasonable."[11] We agree with this approach. We therefore review a military judge's sentencing decision, within the context of whether a sentence is "plainly unreasonable," under an abuse of discretion standard.

*2. Analysis*

Federal courts, in interpreting the statutory meaning of "plainly unreasonable" in a federal statute, have observed that Congress intends there to be a distinction between "unreasonable" and "plainly unreasonable."[12]

The word "plainly" was meant to modify the word "unreasonable."[13] Therefore, in determining whether a sentence is "plainly unreasonable" we first assess whether the sentence in question was "unreasonable."[14] If we determine a sentence is reasonable, then further analysis is unnecessary. Only if the sentence is determined to be *un*reasonable does the Court then examine whether it was "plainly" so. Consistent with the jurisprudence of our superior court and

---

[10] Article 66(e), UCMJ.

[11] *See, e.g., Gall v. United States*, 552 U.S. 38, 51-53 (2007); *United States v. Robertson*, 648 F.3d 858, 859-60 (7th Cir. 2011); *United States v. De Jesus*, 277 F.3d 609, 612 (1st Cir. 2002).

[12] *United States v. Crudup*, 461 F.3d 433, 438 (4th Cir. 2006).

[13] *See id.*

[14] *Id.*; "Unreasonable" is defined as "[n]ot guided by reason; irrational or capricious." Black's Law Dictionary (11th ed. 2019).

that of federal courts in an analogous context, we define "plain" to mean "clear or obvious," which is taken from the plain error analysis.[15]

Here, Appellant was sentenced pursuant to a plea agreement.[16] The BCD Appellant urges us to find plainly unreasonable was an authorized, lawful potential punishment Appellant negotiated with OSTC.

Appellant now argues that the adjudged BCD is plainly unreasonable because his misconduct was insufficiently severe to warrant such a discharge. We are unmoved by Appellant's argument. It is difficult (but not impossible) for us to conjure a scenario where an adjudged sentence — the limitations of which were negotiated by an accused represented by counsel — could be plainly unreasonable. Similarly, it would be difficult to find an abuse of discretion where a military judge sentences an accused within the limitations of a negotiated plea agreement. Although not dispositive, where an accused, represented by competent counsel, bargains for a specific range of punitive exposure, and the resulting sentence falls within the negotiated range, that sentence carries strong indicia of being reasonable.[17]

Here, the military judge conducted a thorough colloquy with Appellant and did not abuse his discretion in opting to adjudge a BCD. During his colloquy with the military judge, Appellant affirmed that he had thoroughly read the plea agreement; that he understood the content of the agreement; that he had discussed the plea agreement with his counsel; that he was satisfied with his defense counsel, and that he voluntarily agreed to the sentencing terms.[18] Appellant further told the military judge that he understood the negative consequences of receiving a BCD.[19]

Appellant received the benefit of his time-served plea agreement. And, as part of his plea agreement, the domestic violence charge was withdrawn and

---

[15] *See United States v. Cole*, 84 M.J. 398, 404 (C.A.A.F. 2024) (*citing United States v. Bodoh,* 78 M.J. 231, 236 (C.A.A.F. 2019)); *Crudup,* 461 F.3d at 439.

[16] R. at. 58; R. at 87.

[17] *See generally United States v. Avellaneda*, 84 MJ 656, 663 (N-M. Ct. Crim. App. 2024); *see also United States v. Spencer*, 86 M.J. 379 (2026). In *Spencer*, our superior court, analyzing the former "should be approved" version of Article 66, UCMJ, ordered us to conduct a new review of the appellant's sentence because this Court created uncertainty as to whether we had independently reviewed Appellant's sentence. Here, we have thoroughly reviewed whether Appellant's BCD was plainly unreasonable applying an abuse of discretion standard of review.

[18] R. at 50-62.

[19] R. at 62.

dismissed. In exchange, the OSTC and Appellant agreed to give the military judge discretion on whether a BCD would be adjudged. The record therefore shows Appellant's BCD was a possible result of the plea agreement that he negotiated and voluntarily entered into with the OSTC. The BCD component of Appellant's sentence is not unreasonable; the military judge did not abuse his discretion in adjudging a sentence that falls squarely within the limits set out in the plea agreement.

Even if we were to disregard the fact that Appellant negotiated a plea agreement that exposed him to the possibility of receiving a BCD, we are convinced that the adjudged BCD was a reasonable consequence of the misconduct for which Appellant was sentenced. Appellant's misconduct included repeated, knowing violations of multiple no contact orders from his commanding officer and making multiple threats of bodily harm and death to SN S.T. and her family. The military judge's decision to adjudge a BCD on the facts of this case was not unreasonable, let alone plainly so.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and that no error materially prejudicial to Appellant's substantial rights occurred.[20]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[20] Articles 59 & 66, UCMJ.